Filed 7/24/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JENNIFER TOY, et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent. | A173560<br><br>(San Francisco County<br>Super. Ct. Nos. CPF-23-518342,<br>CPF-22-517764) |

Under validation statutes a public agency can file an action to uphold—that is, validate—its handling of an agency matter (see Code. Civ. Proc. § 860 et seq.). Validation actions can also be brought by private parties seeking to invalidate the matter in question, in what are sometimes called reverse validation actions. And when the validation statutes apply, "they supersede other mechanisms by which an interested private party might seek to challenge" the agency matter. (*Davis v. Fresno Unified School District* (2023) 14 Cal.5th 671, 685 (*Davis*).)

Effective January 1, 2022, section 53759 was added to the Government Code (Section 53759), which expressly provided that any judicial action or proceeding attacking water rates adopted or modified after January 1, 2022 "shall be commenced within 120 days." On May 23, 2023, the City and County of San Francisco (the City) adopted Resolution No. 23–103, setting new water rates to go into effect on July 1. And on October 3, three plaintiffs filed a class action against the City claiming the new water rates violated

1

Proposition 218. The lawsuit alleged that plaintiffs had filed a claim under the Government Tort Claims Act, and sought a refund, declaratory relief, equitable relief, and a writ of mandate. The City filed an answer and litigated the case against plaintiffs for over a year when, in January 2025, the City filed a motion for judgment on the pleadings on the ground that plaintiffs failed to bring a reverse validation action in accordance with Section 53759 and Code of Civil Procedure sections 860 et seq. Plaintiffs opposed the motion, asserting fundamentally that they sought a refund, an action not subject to the validation statutes. The trial court agreed with the City, and in a comprehensive order held that the validation statutes applied, that such statutes are mandatory and jurisdictional, and that plaintiffs failed to comply with the statutes in two respects, including that their lawsuit was time-barred.

Plaintiffs appeal, asserting various reasons why the trial court's decision was error, most fundamentally that by defending the case the City waived the validation law. Plaintiffs also assert that their action was timely. We hold that the validation law was mandatory and jurisdictional, and that plaintiffs' failure to comply with that law was fatal to their claim. We thus affirm, with no need to discuss the timeliness issue.[1]

---

[1] Plaintiff's request for judicial notice filed September 12, 2025, is denied as to the items (exhibits G through K) not already ruled on and plaintiff's supplemental request for judicial notice filed July 9 is denied.

# BACKGROUND

## The Law

### *Validation Actions*

In *Davis*, *supra*, 14 Cal.5th 671, 684–685, our Supreme Court described validation actions and their 65-year history:

"An action under the validation statutes permits a public agency to obtain a judgment upholding its handling of an agency matter. (Code Civ. Proc., § 860.) We discussed the history of the validation procedure in *Bonander v. Town of Tiburon* (2009) 46 Cal.4th 646. There we said: 'By 1961, the California codes contained a patchwork of provisions governing validation proceedings, with each set of provisions dedicated to a different statutory scheme. In that year, the Legislature sought to replace this patchwork with a general validation procedure. [Citation.] This procedure, which the Legislature codified as Code of Civil Procedure sections 860 through 870, does not, in itself, authorize any validation actions; rather, it establishes a uniform system that other statutory schemes must activate by reference.' (*Bonander*, at p. 656.) . . . . [¶] . . . .

"Significantly, validation actions are not always brought by the agency involved in the matter. Code of Civil Procedure section 863 authorizes private parties to bring validation actions, and the private party is often seeking to invalidate the matter in question. . . . Actions brought by private parties under section 863 are sometimes called reverse validation actions.

"A validation action is 'a proceeding in rem' (Code Civ. Proc., § 860), which means that the judgment binds all persons and entities having an interest in the agency matter in question. . . . Moreover, when the validation statutes apply, they supersede other mechanisms by which an interested private party might seek to challenge the same agency matter. This

3

preclusion of alternative remedies is necessary if the validation statutes are to serve their purpose of once and for all determining the validity of the agency matter.  Thus, Code of Civil Procedure section 869 provides in relevant part:  'No contest except by the public agency or its officer or agent of any thing or matter under this chapter shall be made other than within the time and the manner herein specified.' "

**Section 53759**

In 2021, effective January 1, 2022 (Stats. 2021, ch. 216, § 1, Sen. Bill No. 323 (2021–2022 Reg. Sess.)), the Legislature enacted section 53759.  It provides in pertinent part as follows:

"(a)  Any judicial action or proceeding to attack, review, set aside, void, validate, or annul an ordinance, resolution, or motion adopting a fee or charge for water or sewer service, or modifying or amending an existing fee or charge for water or sewer service, shall be commenced within 120 days of the effective date or of the date of the final passage, adoption, or approval of the ordinance, resolution, or motion, whichever is later.

"(b)  Any action under this section by a local agency or interested person shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure, except that the time limits of subdivision (a) shall apply. . . . [¶] . . . . [¶]

"(d)  A water or sewer agency required to mail a written notice pursuant to paragraph (1) of subdivision (a) of Section 6 of Article XIII D of the California Constitution shall include in the written notice a statement that there is a 120-day statute of limitations for challenging any new, increased, or extended fee or charge. . . . [¶] . . . [¶]

"(f)  This section shall only apply to a fee or charge for water or sewer service that has been adopted, modified, or amended after January 1, 2022."

4

Section 53759 is the other law, the other "statutory scheme[]" referred to in *Davis*. (See *Hiller v. Marin Municipal Water District* (2026) 120 Cal.App.5th 1147, 1157.)

**The Lawsuits**

*The Toy Action*

On May 17, 2022, plaintiffs Jennifer Toy, Michele Dickstein, and Rose Aquilina filed a class action naming the City as defendant (the Toy Action). The complaint in the Toy action is not in the record, but as described in the briefing the action challenges a water rate resolution adopted by the San Francisco Public Utility Commission (SFPUC) in 2018, alleging that the resolution included costs for hydrant water flows and infrastructure in the water rates in violation of Proposition 219. We know nothing more about any pleadings in the Toy Action, but from the register of actions we know that the case has been vigorously litigated in the several years since its filing, generating a 28-page register of actions as of the filing of the record in this case.

While the Toy Action was pending, on May 23, 2023, the City adopted Resolution 23–103 (the Resolution) increasing water rates for the period July 1, 2023 through June 30, 2026. Before adopting the Resolution, the SFPUC sent notices to all retail water ratepayers providing the information necessary to understand the rates as required by Proposition 218,[2] and

---

[2] Proposition 218 is one of a series of voter initiatives restricting the ability of state and local government to impose taxes and fees. (*Plantier v. Ramona Municipal Water District* (2019) 7 Cal.5th 372, 380.) Among other things, Proposition 218 added article XIII D to the California Constitution, which "imposes distinct procedural and substantive limitations" on a local agency's ability to extend, impose, or increase "property-based taxes and fees." (*Plantier*, at p. 381.)

included notice to ratepayers they would have 120 days to file any legal challenge to the proposed water rates under the applicable reverse validation procedures. (*Ibid*.; see Gov. Code, § 53739.)

*The Aquilina Action*

On October 3, 2023, Rose Aquilina, Ted Loewenberg, and Mark Roh filed a class action lawsuit that named one defendant, the City (the Aquilina Action). The complaint was styled "Refund, Declaratory Relief, and Equitable Relief, and Petition for Writ of Mandate," and was based on the claim that the City violated "Article13 D of the California Constitution (Proposition 218) by imposing water rates and charges for water service that exceed the cost of service." It alleged that "Proposition 218 prohibits local government from imposing fees for property related services that exceed the cost of the service, unless the fees are voter approved"; that "[o]ngoing water service is a property related service"; that on May 23, 2023, the City "adopted increased retail water rates through [Resolution No.] 23-0103"; and that such "improperly included costs associated with public fire service in calculating its cost of service to plaintiffs and class members" and the resulting rates and charges "are more than the actual cost of service." The complaint also alleged that on August 8, 2023, plaintiffs presented to the City separate claims under the Government Claims Act, to which the City verbally responded on September 25 that the claims were denied by process.

On November 17, the City filed its answer to the complaint, which among other things asserted 23 separate defenses, including these four: (1) failure to state a claim; (2) "Plaintiffs' suit is barred in whole or in part by statutes of limitations"; (3) "Plaintiffs' suit [was] barred . . . by the limitations period under the Government Claims Act"; and (4) that the action sought remedies not authorized by law.

6

And for the next 14 or so months the City participated in defense of the Aquilina Action without expressly asserting that the action was procedurally improper. Such participation included the filing of several joint case management conference statements; requesting a jury trial and posting jury fees; engaging in discovery, including attending several depositions; and stipulating to the consolidation of the Toy and Aquilina Actions.[3]

On June 6, 2024, the trial court certified classes in both cases.

On November 14, the parties filed cross-motions for summary judgment, the City's motion addressing both the Toy and Aquilina Actions. And on January 13, 2025, the parties filed their opposition briefs.

That same day, the City filed a motion for judgment on the pleadings in the Aquilina Action, where the City asserted that plaintiffs' complaint was untimely under section 53759 and failed to comply with the validation procedures.

Plaintiffs filed opposition to the motion, including a memorandum of points and authorities that had five brief arguments totaling 15 pages. The first argument was that the "City Chose to Litigate Aquilina as an Alternative to Chapter 9 Validation Proceedings," an argument that did not assert waiver; the second was that the Aquilina Action was timely filed; and the last three, totaling four pages, were these: "Validation Actions Allow for Alternative Forms of Notice to the Public"; "Publication of the Summons was Not Required Because the Gravamen of Plaintiffs' Complaint was a Claim for a Refund"; and "If a Validation Action was Required, Good Cause Exists for Allowing Plaintiffs to Proceed with Publication Now."

---

[3] The City also paid, pursuant to court order, approximately half of the approximately $80,000 cost of distributing over a quarter million notices to class members, half of which the City allocated to the Aquilina action.

7

The motion came on for hearing on May 9, a lengthy hearing indeed, resulting in a reporter's transcript of 39 pages. The parties filed supplemental briefs, and on May 16 the trial court filed its order, a comprehensive 18-page order granting the motion without leave to amend. The trial court held that because Plaintiffs' claim attacked the validity of the 2023 water service fees, "Plaintiffs were required to bring this action in accordance with the reverse validation procedures." The court cited and applied authorities holding that these procedures are mandatory and jurisdictional, and that plaintiffs had failed to comply with the reverse validation requirements in two separate ways: (1) the complaint was not timely filed after the Resolution was validated and (2) "Plaintiffs failed to follow the reverse validation procedures required for" the superior court "to exercise jurisdiction." The court went on to reject "Plaintiffs' argument that the class notice provided [by plaintiffs was] an acceptable alternative form of notice under the validation statutes," concluding their argument was "unconvincing" because the "plain language of the validation statutes makes clear that . . . notice by publication is mandatory, not permissive."

On June 3, plaintiffs filed a notice of appeal from the order granting judgment on the pleadings, noting that they "specifically appeal from any judgment in Case Number CPF-23-518342 entered subsequent to that order."

As best we understand, there is no judgment, only the order, which is not appealable. (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 653 ["[m]any 'orders' are not statutorily appealable, and an appeal must therefore be taken from a 'judgment' before the trial court's decision may be reviewed . . . includ[ing] orders granting judgment on the pleadings"].) However, as confirmed in the context of a demurrer, "in the interest of judicial economy, we may construe the order as a final appealable judgment.

8

[Citation.]" (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069; see generally *Vibert v. Berger* (1966) 64 Cal.2d 65, 67–68.) This we do, and thus turn to the substance of the appeal.

## DISCUSSION

### Standard of Review

As the parties agree, our review is de novo. "A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint . . . supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff . . . has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166; *Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 556 (*Protect Agricultural*) [affirming judgment on the pleadings based on the failure to bring a reverse validation action].)

### The Validation Law Applies and Plaintiffs Failed to Comply With It

As quoted above, "when the validation statutes apply, they supersede other mechanisms by which an interested private party might seek to challenge the same agency matter." (*Davis, supra*, 14 Cal.5th at p. 685.) Validation law has long referred to Code of Civil Procedure section 860 et seq., reference expressly confirmed in Section 53759 that "Any action under this section . . . shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure, except that the time limits of subdivision (a) shall apply . . . ." This means, among other things, that plaintiffs had to timely file an in rem action and promptly

9

provide service of a summons with specific contents directed to both the City and by publication to " 'all persons interested in the matter,' " consistent with the statutory requirements (see Code. Civ. Proc. §§ 860–863)—publication that is "the primary means of notice in a validation case." (*Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1035 (*Katz*).)

Plaintiffs did not seek approval of the form or method of service of any service of any summons on all interested individuals, and did not provide service by publication of any summons on all interested individuals within the 60 days required by Code of Civil Procedure section 863—or indeed, at any time. Moreover, the summons that plaintiffs served—not incidentally, only on the City—did not meet the requirements for a reverse validation summons, which "must be (1) in the prescribed form, (2) directed to all persons interested in the matter and to the public agency, and (3) published for the period and in the manner required by statute." (*Protect Agricultural*, *supra*, 223 Cal.App.4th at p. 559; see Code Civ. Proc., §§ 861, 861.1.)

*Katz* elaborated on the significance of this: "In a validation action the thing that is the subject of the action is the matter to be validated, i.e., the ordinance, resolution, or other action taken by the public agency. The only way for the court to acquire jurisdiction over the matter is to ensure that notice is given to all interested persons so that the resulting judgment can be conclusive as against them. [Citation.] Notice is provided by publishing the summons in a particular form, within a specified [time], and specifying a date for response. Jurisdiction is not 'complete' until 'after the date specified in the summons.' ([Code Civ. Proc.,] § 862.) Failure to publish a summons in accordance with the statutory requirements deprives the court of jurisdiction over 'all interested parties' ([Code Civ. Proc.,] § 861), which deprives the court of the power to rule upon the matter. . . . Unless the plaintiff has published a

10

summons in compliance with the statutory requirements, the court has no jurisdiction to rule upon the matter that is the subject of the action." (*Katz, supra,* 144 Cal.App.4th at p. 1032.)

Contrary to their position below, where plaintiffs asserted their action was for a refund, and thus not subject to validation law, plaintiffs do not meaningfully argue that the validation law does not apply. Rather, plaintiffs first argue that by "Choosing to Litigate Aquilina as a Government Claims Action, City Waived Application of the Validation Procedures," that the "City's litigation conduct demonstrates its election under Code of Civil Procedure section 869 to contest the validity of its rates through ordinary defensive litigation rather than the validation procedures." We disagree.

We begin by setting forth the law of waiver, law that plaintiffs do not even mention. As we explained in *California-American Water Co. v. Marina Coast Water District* (2022) 86 Cal.App.5th 1272, 1292 (*California-American*): "Waiver means 'the intentional relinquishment or abandonment of a known right.' (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1048, superseded by statute on another ground as noted in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668; see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.) . . . Waiver ' "always rests upon intent." ' (*City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107.) The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598; see *Waller, supra,* 11 Cal.4th at pp. 31, 33–34.)" Waiver is, the Supreme Court has described, "an express relinquishment of a right or privilege" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1). In short, waiver requires something express, some intentionality. And " 'the

11

burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver." [Citation.]' " (*Waller, supra,* 11 Cal.4th at p. 31.)

Plaintiffs do not even attempt to show, much less show, such intentionality. In any event, what arguments they do make have no merit.

Plaintiffs cite no case addressing the issue of waiver in a validation action, indeed, their counsel admitting at the hearing he was not aware of any published decision concluding that a public entity defendant waived a plaintiff's compliance with the reverse validation requirements by raising it too late in the trial court. And plaintiffs' reliance on Code of Civil Procedure section 869 is misplaced.

Section 869 reads as follows: "No contest except by the public agency or its officer or agent of any thing or matter under this chapter shall be made other than within the time and the manner herein specified. The availability to any public agency including any local agency, or to its officers or agents, of the remedy provided by this chapter, shall not be construed to preclude the use by such public agency or its officers or agents, of mandamus or any other remedy to determine the validity of any thing or matter."

Based on that, plaintiffs' argument runs as follows: A "contest" means to "dispute or challenge through legal procedures." (https://www.merriam-webster.com/dictionary/contest#legalDictionary as of 7/22/2026.) Courts use "contest" to mean dispute or challenge, as when a party waives a jurisdictional issue by "contesting the merits." (*State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 437.) Here, the City unquestionably "contested" plaintiffs' challenge through legal procedures— filing an answer, conducting discovery, and seeking summary judgment.

(*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 373 (Mosk, J., concurring) ["An action is contested when an answer is filed in response to a complaint."].)

Plaintiffs' strained argument, focusing on the second sentence of section 869, does not support them.  Here, the City is a defendant, not a plaintiff, and thus section 869 holds that Plaintiffs had to raise their challenge "within the time and the manner" set forth in the reverse validation procedures, as the cases recognize.  "Read inconjunction [*sic*] with the rest of the statutory scheme, the first sentence of section 869 means that any contest of a matter subject to validation proceedings, other than one brought by the agency involved, must be asserted not later than the date specified in the summons."  (*Moorpark Unified School Dist. v. Superior Court* (1990) 223 Cal.App.3d 954, 958; see *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 851 ["Section 869 states that an interested person *must* bring such an action within the statutory time limits or be forever barred from contesting the validity of the agency's action in court."  (Italics in original)].)  As Division One of this court put it, the second sentence of section 869 confirms that "claims *brought by public entities* . . . are statutorily exempted under the express language of the validation statutes."  (*California-American Water Co. v. Marina Coast Water Dist.* (2016) 2 Cal.App.5th 748, 760 (*Cal-Am*), italics added.)

Plaintiffs rely primarily on *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335.  But if anything, that case hurts them, the Supreme Court there recognizing that "while [Code of Civil Procedure section 863] says that an interested party 'may' bring such an action, section 869 says he *must* do so or be forever barred from contesting the validity of the agency's action in a court of law."  (*City of Ontario, supra,* 2 Cal.3d at p. 341.)  Nothing about *City of*

13

*Ontario* shows, as plaintiffs put it, "that agencies may validate defensively outside the [reverse validation] framework," let alone agree to do so implicitly. Put slightly differently, the interested party's compliance with the reverse validation procedural requirements is a prerequisite for the court's jurisdiction, not an affirmative defense to be proven by the agency. (See *Coachella Valley Mosquito and Vector Control Dist. v. City of Indio* (2002) 101 Cal.App.4th 12, 18.)

*Golden Gate Hill Development Co., Inc. v. County of Alameda* (2015) 242 Cal.App.4th 760 (*Golden Gate Hill*) illustrates the mandatory nature of the reverse validation procedures. There, plaintiff sought a refund of school district taxes based on the argument that the underlying tax measures unlawfully imposed different taxes according to property type and size. (*Id.* at p. 764.) While the suit was filed within the statute of limitations for a tax refund claim, "the time period for a validation action ha[d] passed." (*Id.* at p. 768.) Division Five of this court held that plaintiff's refund "claim lack[ed] any *legal basis*, [] because the [measures adopting the challenged tax] were long ago deemed valid by operation of the validation statutes." (*Id.* at p. 771, italics in original; to the same effect, see *Campana v. East Bay Municipal Utility District* (2023) 92 Cal.App.5th 494, 501–507.)

As noted, plaintiffs assert that section 869 anticipates that a public entity may choose to "contest the validity of its rates through ordinary defensive litigation rather than validation procedures." We reject the assertion. First, plaintiffs focus on "contest" as a verb, ignoring that section 869 refers to it as a noun: a "contest . . . made . . . ." A public agency does not "make a contest" of its water rates by defending them in litigation.[4]

---

[4]      Neither of the cases plaintiffs cite for the meaning of "contest" related to the validation statutes or similar statutory requirements: *State Farm*

14

Second, plaintiffs suggest, without citation of authority, that summary judgment is an alternative "remedy" within the meaning of the second sentence of section 869. But the decisions recognize that the "remedies" referenced in that second sentence of section 869 are, like the alternative of "mandamus" listed in the statute, forms of relief that may be sought by a public entity as an initiating party, not a dispositive motion.

In support of their waiver claim, plaintiffs cite *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 569, a case involving waiver of the right to compel arbitration. But *Quach* emphasizes that its analysis is specific to contractual agreements, noting "A defendant who instead litigates the case risks losing the *contractual* right to compel arbitration. One way a *contractual* right may be lost is by waiver." (*Id.* at p. 569, italics added.) No court has held that arbitration waiver cases—about whether to enforce a private agreement between parties—applies to a plaintiff's failure to follow procedures required by statute to protect the rights of other interested parties.

We cannot end our discussion of plaintiffs' waiver argument without comment on plaintiffs' reply brief. As noted, plaintiffs first argument in their opening brief, to which they devote a significant portion of that brief, asserted in bold-face that "By Choosing to Litigate Aquilina . . . City Waived Application of the Validation Procedures." Now, in their reply brief, plaintiffs argue, also in bold-face, that the "City's Conduct Establishes Forfeiture." Forfeiture, of course, is different from waiver. (*Goodwin v. Comerica Bank,*

*General Ins. Co. v. JT's Frames, Inc.*, *supra*, 181 Cal.App.4th at p. 437 addresses personal jurisdiction objections; and *Rooney v. Vermont Investment Corp.*, *supra*, 10 Cal.3d at p. 373 analyzed the authority of court commissioners versus judges.

*N.A.* (2021) 72 Cal.App.5th 858, 867, fn. 8 ["Waiver and forfeiture are distinct doctrines with different substantive requirements . . . "].) " 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' " (*San Mateo Union High School District v. County of San Mateo* (2013) 213 Cal.App.4th 418, 435, fn. 8, and cases there collected.)

No reason is given by plaintiffs for this change of position, but as plaintiffs' briefing impliedly acknowledges, waiver requires an intention that plaintiffs never even attempted to show. In any event, arguments made for the first time in a reply brief are improper and will not be considered. (*American Indian Model Schools v. Oakland Unified School District* (2014) 227 Cal.App.4th 258, 275.)

Plaintiffs next devote several pages in their brief to various arguments that refer to "jurisdiction." The first asserts that "Validation Requirements Do Not Affect the Court's Fundamental Jurisdiction", going on to cite some boilerplate principles involving jurisdiction. Three pages later plaintiffs assert that "Section 53759 Contains No Clear Marker of Legislative Intent to Limit the Fundamental Jurisdiction of the Courts," and on the next page that "Section 863's Publication Requirement Does Not Affect a Court's Fundamental Jurisdiction." The arguments reflect a myopic reading of the law.

It is probably enough to note plaintiffs' express acknowledgment below, that "in a validation action, the 'only way for the court to acquire jurisdiction over the matter is to ensure that notice is given to all interested persons so that the resulting judgment can be conclusive as against them,' " citing *Katz, supra,* 144 Cal.App.4th at p. 1032. Indeed, as *Katz* went on to hold, "Failure to publish a summons in accordance with the statutory requirements

16

deprives the court of jurisdiction over 'all interested parties' (§ 861), which deprives the court of the power to rule upon the matter." (*Katz*, *supra*, 144 Cal.App.4th at p. 1032.)

As *Katz* put it a page earlier, rejecting the plaintiff's argument there, apparently the same argument plaintiffs make here: "Plaintiff first contends that the summons provisions are not 'jurisdictional,' by which plaintiff seems to mean that the specifics of the summons requirements may be *mandatory* but failure to comply does not deprive the trial court of jurisdiction to proceed. . . . The argument is a misstatement of the law." (*Katz*, *supra*, 144 Cal.App.4th at p. 1031.)

But beyond *Katz*, many courts have held that compliance with the reverse validation requirements is required for a court to have jurisdiction. (See, for example, *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 428; *Coachella Valley Mosquito and Vector Control Dist. v. City of Indio*, *supra*, 101 Cal.App.4th at p. 18; *Arnold v. Newhall County Water Dist.* (1970) 11 Cal.App.3d 794, 800.)[5]

Plaintiffs assert that good cause exists for their failure to comply with the validation procedures. The trial court considered the identical claim below, and held that plaintiffs' claimed showing "does not remotely qualify." We agree completely.

A trial court's decision on the issue of good cause " 'rests almost entirely in the discretion of the court below, and appellate tribunals will rarely

---

[5]     The two cases cited by plaintiffs do not involve courts' jurisdiction over a matter as to all interested parties: *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 950 addressed the deadline to petition to vacate an arbitration award; *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 808 analyzed a government immunity in a lawsuit between parties over which the court had jurisdiction.

interfere, and never unless it clearly appears that there has been a plain abuse of discretion.' [Citation.]" (*City of Ontario*, *supra*, 2 Cal.3d at p. 347.) Plaintiffs have not demonstrated such abuse.

Plaintiffs fundamentally rely on *City of Ontario*, where the issues included whether various statutes were the subject to the validation procedures, and it was in resolving that issue that the Supreme Court used the adjectives "complex and debatable." (2 Cal.3d at p. 345.) Such adjectives do not apply here. Section 53759 clearly incorporates the validation statutes and applies to a resolution that adopts or changes a fee or charge for water services. The law "is not novel" (*Katz, supra*, 144 Cal.App.4th at p. 1036), the procedures not "complex or debatable." (*Id*.) Plaintiffs' failure to comply with the notice procedures cannot be excused. (See *Protect Agricultural Land*, *supra*, 223 Cal.App.4th at pp. 560–563 [no good cause for objector's failure to comply with summons and publication requirements applicable to reverse validation action where existing case law and secondary authorities made clear that challenges to certain LAFCO decisions must be pursued as reverse validation actions]; *Community Redevelopment Agency v. Superior Court of Los Angeles County* (1967) 248 Cal.App.2d 164, 175 ["Here the law was all in the books and readily available to plaintiffs' attorney."].) Plaintiffs have demonstrated no abuse of discretion.

Lastly, plaintiffs contend in a brief two-page argument that "Belated Publication Can Perfect In Rem Jurisdiction." Maybe so. But not here.

*Card v. Community Redevelopment Agency* (1976) 61 Cal.App.3d 570, the case plaintiffs rely on, is distinguishable. The issue there arose in the context of a Code of Civil Procedure section 473 motion, and was whether a trial court abused its discretion in allowing a plaintiff to provide belated service of summons by publication and amend the complaint in the context of

18

a then-unclear, but now resolved, issue of the need to comply with reverse validation procedures when a plaintiff additionally brings in personam claims. (*Id.* at p. 575.) The court held that while it would affirm the trial court's finding that good cause existed on the facts there, "if the trial court had ruled otherwise on plaintiffs' motion for relief [the court] would have left its ruling undisturbed." (*Id.* at p. 576.) Plaintiffs here also never filed a motion for relief under Code of Civil Procedure section 473, as the plaintiffs promptly did in *Card.* (See *id.* at p. 576.)

The trial court's conclusion that there was no good cause was amply supported and, at a minimum, did not constitute an abuse of discretion. (See *Community Redevelopment Agency*, *supra*, 248 Cal.App.2d at p. 175 ["[P]laintiffs appear to argue that their failure to publish a proper summons within the 60-day time limit fixed by section 863, was cured by the publication of a 'corrected' summons after the ruling of the court on defendants' motion to dismiss. There is no merit in this contention."].)

## DISPOSITION

The judgment (order) is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A173560P)

San Francisco City and County

Trial Judge:        Ethan P. Schulman, Judge

Counsel:

Driscoll & Omens, Donald P. Driscoll and Adryane R. Omens for Plaintiffs and Appellants.

David Chiu, City Attorney, Sara J. Eisenberg, Chief City Attorney, and Alexander J. Holtzman, Deputy City Attorney, for Defendant and Respondent.